UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN M. POWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01912-JRS-MKK |
| | ) | |
| BIOLIFE PLASMA, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

**Order Addressing Report and Recommendation and Motion to Enforce Settlement Agreement**

This matter is before the Court on Plaintiff John M. Powe's Objections, (ECF Nos. 85 & 86), to the Magistrate Judge's Report and Recommendation, (ECF No. 80), on Defendant BioLife Plasma LLC's ("BioLife") Motion to Enforce Settlement Agreement, (ECF No. 61). For the following reasons, Powe's Objections to the Report & Recommendation are **sustained in part and overruled in part**, the Report and Recommendation is **adopted in part**, and BioLife's Motion to Enforce Settlement Agreement is **granted**.

## I. Factual Background[1]

On September 9, 2025,[2] the Parties, appearing in person and by counsel, engaged in a settlement conference with the Magistrate Judge. (ECF No. 50.) At the conclusion of the settlement conference, (ECF No. 50), the Magistrate Judge presented a mediator's proposal to both Parties, (Sealed Emails from Magis. Judge

[1] The Court accepts the Magistrate Judge's Findings of Fact as its own.
[2] Unless otherwise noted, all dates are in 2025.

1–2, ECF 63-1). The proposal set forth the following terms: (1) the exact settlement amount BioLife was to pay Powe; (2) that BioLife was to make this payment to Powe through three separate checks; (3) a requirement that Powe execute a global release and dismiss his complaint; (4) a requirement that Powe resign upon execution of the Settlement Agreement and agree to a no-rehire provision; (5) a requirement that BioLife provide a neutral reference; and (6) a requirement that the Parties work together to finalize and execute a written settlement agreement that was to include confidentiality and non-disparagement provisions. (*Id.* at 2.) The mediator's proposal concluded with the following:

> After I receive responses from both parties, I will inform everyone whether a resolution has been reached. If at least one party rejects the proposal, I will inform everyone that a resolution has not been reached (i.e., I will not inform you of the other side's position if you reject the proposal).
>
> Please note that this proposal is contingent on the parties working together to memorialize all terms in a written settlement agreement. In other words, if both sides accept the proposal, there will be no final agreement until all remaining terms have been finalized and put in writing.

(*Id.* at 2).

On September 11, the Magistrate Judge informed the Parties that both Parties had accepted the mediator's proposal, (ECF No. 50), and ordered the Parties to forward an executed settlement agreement to her by September 15, (Sealed Emails from Magis. Judge 1, ECF 63-1).

On September 15, the Parties reported to the Magistrate Judge that they were still working through the timing of Powe's resignation and the processing of the settlement checks. (Sept. 15 Emails with Magis. Judge 1, ECF No. 62-2.) To discuss

these issues, the Magistrate Judge held a status conference on September 18. (ECF No. 53.) At the conference, Powe's counsel explained that Powe was concerned about a 30-day gap in income between his resignation (which was set to occur upon the signing of the settlement agreement) and the receipt of the settlement funds. (*See* Def.'s Br. in Supp. ¶ 5, ECF No. 62.) To address Powe's concern, BioLife offered to pay Powe his accrued vacation and holiday pay, to which he was already entitled upon voluntary resignation irrespective of the Parties' settlement agreement, within 48 hours of the execution of the settlement agreement. (*See id.* ¶ 6.) Plaintiff's counsel agreed that this sufficiently addressed Powe's concern, and the Parties reached an agreement in principle regarding the accelerated payment of these funds. (*See id.*) The Magistrate Judge ordered the Parties to submit an executed agreement to the court by October 3, 2025. (ECF No. 53.)

On September 22, defense counsel emailed Plaintiff's counsel, providing a draft settlement agreement and stating that the resignation date was not finalized and that defense counsel still needed BioLife's confirmation on the breakdown of settlement checks. (Redacted Settlement Agreement and Email 1, ECF No. 62-3.) The draft agreement did not mention the accelerated payment of Powe's accrued vacation and holiday pay. (Sealed Copy of Settlement Agreement 1–7, ECF No. 63-2.) On September 24, defense counsel contacted Powe's counsel to confirm BioLife's assent to the settlement check break down and requested a response from Powe. (*Id.* at 1.)

On October 13, Powe sent his counsel an email, seeking to "confirm one detail before signing" the settlement agreement—that Powe would still receive his accrued vacation and holiday pay and that such pay was "not waived or included in the settlement sum and that [he] will still receive them as part of [his] regular earned compensation." (Email from Pl. & Pl.'s Counsel 2, ECF No. 62-4.) Plaintiff's counsel forwarded this email to defense counsel and requested clarification that the vacation and holiday pay are addressed in the settlement. (*Id.* at 1.)

On October 20, defense counsel forwarded Plaintiff's counsel a revised settlement agreement with modifications only to paragraph 11. The original version read in pertinent part:

> 11. **Affirmations.** Powe is not entitled to (sic) and the Settlement Sum or Additional Consideration would not be issued in whole or in part to him or on his behalf but for execution of this Agreement and fulfillment of the promises contained herein. Powe affirms he has been paid and received all leave (paid or unpaid), compensation, wages, bonuses, overtime, and benefits to which he may be entitled from his employment with the Company and that no other leave (paid or unpaid), compensation, wages, bonuses, overtime, and benefits are due to him, except as provided for in this Agreement, including the Additional Consideration described in Paragraph 3(a). . . .

(Sealed Copy of Agreement ¶ 11, ECF No. 63-2.) The revised version read in pertinent part:

> 11. **Affirmations**. Powe is not entitled to the Settlement Sum and it would not be issued in whole or in part to him, or on his behalf, but for execution of this Agreement and fulfillment of the promises contained herein. The Parties understand and acknowledge the Company, consistent with its ordinary practice, will pay out Powe's accrued vacation and holiday pay ("Accrued Compensation") upon his resignation. The parties likewise understand and acknowledge the Company will endeavor to make the Accrued Compensation available to Powe at or around 48 hours following the Company's receipt of the fully

> executed Agreement. Nothing in this Agreement, however, shall be construed as creating any duty or obligation around the Accrued Compensation discussed in this Paragraph 11. Apart from the Accrued Compensation, Powe affirms he has been paid and received all leave (paid or unpaid), compensation, wages, bonuses, overtime, and benefits to which he may be entitled from his employment with the Company and that no other leave (paid or unpaid), compensation, wages, bonuses, overtime, and benefits are due to him, except as provided for in this Agreement. . . .

(Sealed Copy of Rev. Agreement ¶ 11, ECF No. 63-3.)

On that same day—October 20—the Parties' counsel met with the Magistrate Judge and informed her that they had finalized an agreement. Plaintiff's counsel represented to the Magistrate Judge that he was awaiting Powe's signature on the finalized agreement and would promptly provide a signed copy of the written Settlement Agreement to the court upon receipt. The Magistrate Judge set the deadline for submission of an executed agreement for October 22. (*See* ECF No. 54; Def.'s Br. in Supp. ¶ 8, ECF No. 62.) The October 22 deadline passed, (*see* ECF No. 55), but no written agreement was filed. Counsel for the Parties and Powe met with the Magistrate Judge at another status conference on October 29, (ECF No. 57), at which Powe disputed some of the language used in the agreement relating to the payment of his accrued vacation and holiday pay, (*see* Def.'s Br. in Supp. ¶ 9, ECF No. 62). Plaintiff's counsel told the Magistrate Judge after the conference that the Parties had reached an impasse. (ECF No. 57.)

Thereafter, BioLife filed its Motion to Enforce Settlement Agreement. (ECF No. 61.) BioLife argues that the terms in the mediator's proposal were material and supported by adequate consideration from both Parties such that Powe's acceptance

gave rise to a valid enforceable contract. (Def.'s Br. in Supp. 6, ECF No. 62.) BioLife also argues that the Parties had agreed upon the remaining terms in the written agreement. (*Id.* at 6–7.) BioLife requests the Court order Powe to finalize the settlement paperwork and carry out any remaining obligations agreed upon by the Parties. Alternatively, BioLife requests the Court enforce the Parties' agreed upon settlement. Powe responded to the motion, arguing that the Parties never reached an agreement as material terms were missing from the written agreement and his October 13 email was a counter-offer, not an acceptance. (Pl.'s Resp. 1, 4, ECF No. 68.) Powe also argues that he did not authorize a final agreement and that he did not knowingly and voluntarily enter into a binding settlement agreement. (*See id.* at 3, 5.) BioLife filed a reply. (ECF No. 72.)

Magistrate Judge Klump filed her Report & Recommendation recommending the Court grant BioLife's Motion. (ECF No. 80.) Powe, acting *pro se*, filed two identical Objections to the Report & Recommendation, (ECF No. 85; ECF No. 86), and BioLife filed a response thereto. (ECF No. 88.) There was no reply.

## II. Discussion

A magistrate judge may issue a Report and Recommendation on a dispositive matter such as enforcement of a settlement agreement. 28 U.S.C. § 636(b)(1)(B). The Court must make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Powe timely filed his Objections, which

the Court now reviews de novo. As explained below, the Court accepts the Magistrate Judge's recommendations in part.

Settlement agreements are contracts governed by state law. *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015); *Am. Homeland Title Agency, Inc. v. Robertson*, 348 F. Supp. 3d 852, 863 (S.D. Ind. 2018) (quoting *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016)). "A valid contract consists of an offer, acceptance, consideration, and mutual assent." *Ellison*, 47 N.E.3d at 617. Under Indiana law, a settlement agreement must "include . . . a meeting of the minds, which 'focuses on each party's outward manifestation of intent,' not their subjective intent." *Sar v. REV Recreation Grp., Inc.*, No. 25-2535, 2026 WL 1472207, at *2 (7th Cir. 2026) (quoting *Ellison*, 47 N.E.3d at 619). Indiana law does not require that settlement agreements be in writing, "so long as the terms are sufficiently definite, and the parties demonstrate an intent to be bound." *Westbrook v. Hahn*, 829 F. App'x 128, 131 (7th Cir. 2020) (citing *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016)).

Under Indiana law, "parties may make an enforceable contract which obligates them to execute a subsequent final written agreement." *Wolvos v. Meyer,* 668 N.E.2d 671, 674 (Ind.1996); *see also UFG, LLC v. Southwest Corp.,* 784 N.E.2d at 544 ("[T]he mere reference to the making of a future formalized document does not necessarily void an otherwise unambiguous existing agreement as a whole."); *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 181 (Ind. Ct. App. 2011) (binding contract existed when parties entered an oral agreement requiring them to execute a document

memorializing their agreement and the oral agreement contained no uncertainty as to any substantial term of the settlement contract). In such a case, the final agreement is "a mere memorial of the agreement already reached." *Wolvos,* 668 N.E.2d at 674–75. In determining whether an agreement is an enforceable contract or merely an agreement to agree, courts look to the parties' "intent to be bound and definiteness of terms." *Id.* at 675."Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Jetz Serv. Co. v. Ventures*, 165 N.E.3d 990, 994 (Ind. Ct. App. 2021) (quoting *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 (Ind. Ct. App. 2010)). "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom, absolute certainty in all terms is not required." *Id.* at 994–95.

The Court agrees with the Magistrate Judge that the mediator's proposal itself was not an enforceable agreement because it required that additional, material terms, including the confidentiality and non-disparagement provisions, be finalized between the Parties. *See Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997–98 (7th Cir. 2001) (noting confidentiality, non-disparagement, and release provisions are material terms for which there must be agreement on what the terms will say, even if the precise language is not yet in writing, for a contract to be enforceable). The Court also agrees that Powe's October 13 email stating he would sign the agreement if

BioLife added language memorializing their agreement for accelerated payment of his vacation and holiday pay constituted acceptance of the agreement.

And Powe manifested assent and intent to be bound by the terms of the Parties' agreement, which he understood to include not only the terms of the September 22 draft settlement agreement but also the agreed upon accelerated payment of the accrued vacation and holiday pay. After reviewing the draft settlement agreement, Powe indicated that his only modification was to ensure that his vacation and holiday pay are not included in the settlement sum and that he would still receive them as earned compensation. (Email from Pl. & Pl.'s Counsel 2, ECF No. 62-4.) BioLife has not disputed that it agreed to the terms articulated by Powe in his October 13 email to his counsel. (ECF No. 62-4 at 1–2.)

BioLife manifested its assent and intent to be bound by all these terms—the terms of the September 22 draft settlement agreement and the agreement regarding accelerated payment of vacation and holiday pay by revising the written settlement agreement "to include the 'clarification' requested by [Powe]." (ECF No. 88 at 2 (quoting Rep. & Rec. 15–16, ECF No. 80).) BioLife also manifested its intent to be bound by agreeing during the September 18 status conference to accelerate payment of Powe's vacation and holiday pay. The Parties made a binding and enforceable agreement during the September 18 status conference that contained no uncertainty as to any substantial terms.

However, the settlement paperwork BioLife seeks to enforce contains language that is inconsistent with the Parties' enforceable settlement agreement. Here again, in part, is the revised Paragraph 11 BioLife presented to Powe:

> The . . . Company, consistent with its ordinary practice, will pay out Powe's accrued vacation and holiday pay ("Accrued Compensation") upon his resignation. . . . [T]he Company will endeavor to make the Accrued Compensation available to Powe at or around 48 hours following the Company's receipt of the fully executed Agreement. *Nothing in this Agreement, however, shall be construed as creating any duty or obligation around the Accrued Compensation*. . . .

(Sealed Copy of Rev. Agreement ¶ 11 (emphasis added), ECF No. 63-3.) The third sentence writes out the very terms by which BioLife agreed to be bound in the first two sentences. Thus, the settlement paperwork does not represent the Parties' agreement. Rather, the paperwork, specifically the sentence in paragraph 11, beginning "Nothing in this Agreement . . . " interjects uncertainty into that agreement. Had BioLife simply asked the Court to order Powe to finalize the settlement paperwork, the Court would decline to do so.

But BioLife alternatively requests the Court to enforce the Parties' settlement agreement. And the Court agrees with the Magistrate Judge that the Parties did reach a binding and enforceable agreement. The Parties reached an enforceable agreement with no uncertainty as to any substantial terms, which terms incorporated the written specifics of the agreements made pursuant to the mediator's proposal in the September 22 draft settlement agreement and the Parties' September 18 agreement over accelerated vacation and holiday pay. The sentence beginning with "Nothing in this Agreement" directly conflicts with the Parties' agreement that

BioLife would pay and accelerate payment of Powe's holiday and vacation pay. But for that sentence, the settlement agreement appears to represent the Parties' complete agreement.

Powe argues that he did not authorize his former counsel to accept the settlement agreement on Powe's behalf. An attorney who is retained to represent a client does not automatically have authority to settle the claim, *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1303 (Ind. 1998); however, such authority may be implied. *Id.* at 1303 n.6 ("The client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement"); *see also Pohl v. United Airlines, Inc.*, 213 F.3d 336, 339 (7th Cir. 2000) (citing *Koval*, 693 N.E.2d 1303 n.6 (a plaintiff "may be bound by the settlement if he implied an intention to settle the claim to his attorney, regardless of whether he actually intended to settle the claim")).

In an October 13, 2025, email to Attorney Myers, (ECF No. 62-4 at 1–2), regarding the accrued holiday and vacation pay, Powe asked his then counsel to "confirm that the[] amounts [we]re not waived or included in the settlement sum" and to "have th[at] clarification added to the settlement agreement language to avoid any misunderstanding." (*Id.* at 2.) Powe then thanked Attorney Myers for "making sure th[at] detail [wa]s clearly documented before [he] sign[ed]." (*Id.*). This email constituted express or, at a minimum, implied, authorization by Powe for Attorney Myers to inform BioLife that Powe accepted the settlement agreement with the addition of the agreement regarding the accrued vacation and holiday pay. *See Koval,*

693 N.E.2d at 1301–02 (citation omitted) ("to bind the client, the attorney must have either express, implied, or apparent authority. . . . Express or implied authority "may be conferred by words or other conduct . . . [whereby the attorney] is reasonable in drawing an inference from the [plaintiff's] actions [is] that the [plaintiff] intended to confer authority").

Powe asserts that did not knowingly and voluntarily assent to the agreement. However, when "the plaintiff is represented by chosen counsel throughout negotiations and settlement" of a Title VII claim, the Seventh Circuit presumes the settlement agreement is knowing and voluntary "absent circumstances such as fraud or duress." *Baptist v. City of Kankakee*, 481 F.3d 485, 490–91 (7th Cir. 2007) (citations omitted). A plaintiff may assert four claims, none of which obtain here, to rebut this presumption: (1) fraud in the inducement by the defendant; (2) coercive behavior by the defendant; (3) inadequate opportunity for plaintiff to consult with his attorney before agreeing to the settlement; and (4) collusion between plaintiff's attorney and the defendant to fraudulently induce or coerce the plaintiff into agreeing to the settlement terms. *See Riley v. Am. Fam. Mut. Ins. Co.*, 881 F.2d 368, 374 (7th Cir. 1989).

Powe was represented by counsel throughout the settlement negotiations and settlement of his claims. Powe sent the October 13th email to Attorney Myers more than a month after he had accepted the mediator's proposal. This passage of time and the intervening constructive dialogue between Powe and his attorney, including his email communication, undermine any claims that Powe lacked sufficient

opportunity to consult with his lawyer before accepting the terms of the agreement. *See Riley*, 881 F.2d at 374 (no coercion or duress if plaintiff was given an adequate opportunity to consult with his attorney). Powe does not claim that BioLife fraudulently induced or coerced him to enter the agreement or that his attorney colluded with BioLife. The Court finds that Powe knowingly and voluntarily accepted the terms of the Parties' settlement agreement.

Therefore, the Court finds that Powe's Objections to the Report and Recommendation should be **sustained in part and overruled in part**, that the Magistrate Judge's Report and Recommendation should be **adopted in part and rejected in part**, and that BioLife's Motion to Enforce Settlement Agreement should be granted in the alternative. The Parties are **ordered** to submit an executed settlement agreement to the Magistrate Judge at mjklump@insd.uscourts.gov **no later than September 28, 2026**.

## III. Conclusion

For the foregoing reasons, the Court **overrules in part and sustains in part** Powe's Objections, (ECF Nos. 85 & 86), to the Magistrate's Report and Recommendation; **adopts in part and rejects in part** the Magistrate's Report and Recommendation, (ECF No. 80), and **grants** BioLife's Motion to Enforce the Settlement Agreement, (ECF No. 61). The Parties are **ordered** to email an executed settlement agreement to the Magistrate Judge at mjklump@insd.uscourts.gov **no later than September 28, 2026**.

**SO ORDERED.**

Date: 09/03/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Magistrate Judge Klump

John M. Powe
3104 Albright Road
Kokomo, IN 46902

Peter T. Tschanz
LITTLER MENDELSON, P.C. (Indianapolis)
ptschanz@littler.com
111 Monument Circle
Suite 702
Indianapolis, IN 46204
cmyers@myers-law.com